Carly M. Roman (SBN: 349895)
Raina C. Borrelli (*Pro Hac Vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
raina@straussborrelli.com

*Attorney for Plaintiffs and Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

LAURA SALES and JOANN MCKENZIE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MEDIMPACT HEALTHCARE SYSTEMS, INC. and MEDIMPACT DIRECT, LLC,

Defendants.

Case No. '25CV3005 AJB MMP

**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND EQUITABLE RELIEF FOR:**

1. **NEGLIGENCE;**
2. **NEGLIGENCE PER SE;**
3. **BREACH OF IMPLIED CONTRACT;**
4. **UNJUST ENRICHMENT;**
5. **INVASION OF PRIVACY**
6. **VIOLATION OF THE UCL, Cal. Bus. & Prof. Code § 17200, *et seq*.;**
7. **VIOLATIONS OF CMIA, Cal. Civ. Code §§ 56, *et seq*.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Laura Sales and Joann McKenzie ("Plaintiffs"), on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendants, MedImpact Healthcare Systems, Inc. and MedImpact Direct, LLC ("MedImpact" or "Defendant").

## INTRODUCTION

1. This Class Action arises from Defendant's failure to protect sensitive data (the "Data Breach").

2. On information and belief, the Data Breach was discovered by Defendant on or about October 27, 2025, when Defendant "identified ransomware on certain systems" in its network.[1] Following the Data Breach, Defendant claims to be investigating the incident and working to restore impacted systems.[2]

3. This incident compromised current and former customers' personally identifying information ("PII") and protected health information ("PHI"). Plaintiffs refer to both PII and PHI collectively as "Sensitive Information."

4. Defendant has not yet begun formally notifying Class Members about the Data Breach even though Plaintiffs and thousands of Class Members had their most sensitive personal information accessed and abused, causing them to suffer ascertainable losses in the form of identity theft and fraud, the loss of the benefit of their bargain, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

---

[1] https://www.medimpact.com/clients/resources/press-releases/medimpact-statement (last visited November 5, 2025).

[2] *Id.*

5. Defendant's "Statement Regarding Cybersecurity Incident"[3] obfuscated the nature of the breach and the threat it posted—refusing to disclose how many people were impacted, when the breach began, and how the breach happened.

6. Defendant's failure to timely detect and report the Data Breach made its current and former customers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

7. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

8. In failing to adequately protect Plaintiffs' and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former customers.

9. Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10. Accordingly, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and

[3] *Id.*

restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

**PARTIES**

11. Plaintiff, Laura Sales, is a natural person and citizen of Akron, Ohio, where she intends to remain.

12. Plaintiff, Joann McKenzie, is a natural person and citizen of Akron, Ohio, where she intends to remain.

13. Defendant, MedImpact Healthcare Systems, Inc., is a California stock corporation with its principal place of business at 10181 Scripps Gateway Court, San Diego, CA 92131.

14. Defendant, MedImpact Direct, LLC, is a company formed in Arizona with its principal place of business at 10181 Scripps Gateway Court, San Diego, CA 92131.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendants and Plaintiffs are citizens of different states. And there are over 100 putative Class Members.

16. This Court has personal jurisdiction over Defendants because Defendants have their principal place of business and/or corporate headquarters in California. Furthermore, Defendants regularly conduct business in California and have sufficient minimum contacts in California.

17. Venue is proper in this Court because Defendants' principal office is

in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

***MedImpact***

18. MedImpact Healthcare Systems is the "largest independent pharmacy and benefit health solutions company."[4] MedImpact Healthcare Systems owns MedImpact Direct, a prescription delivery service.[5]

19. As part of its business of providing services, Defendant receives and maintains the Sensitive Information of thousands of its current and former customers.

20. In collecting and maintaining Sensitive Information from its customers, Defendant agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Sensitive Information.

21. Defendant promises to safeguard the Sensitive Information it collects, promising in its "Privacy Policy" that:

a. "We are firmly committed to protecting the privacy of personal information we collect about you;"

b. "We take reasonable steps to protect your personal information, which is any information that identifies you or could reasonably be linked to you. For example, a password is required to access your account and

---

[4] https://www.medimpact.com/clients/who-we-are (last visited November 5, 2025).

[5] https://www.medimpactdirect.com/AboutUs (last visited November 5, 2025).

help to protect your account information;"

c. "We also use encryption technology, called Transport Layer Security (TLS), to help protect personal information transmitted across the Internet. The presence of this encryption may be indicated by https in the browser URL or the image of a closed lock or solid key in the browser window. These indications may not be present in mobile services that use TLS;" and "

d. For payment card information, we use secured networks, encryption, monitoring and tests of security systems, and other safeguards to help protect your information."[6]

22. Despite recognizing their duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect the Sensitive Information in its care or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Defendant left significant vulnerabilities in its systems for the breach and publication of its customers' Sensitive Information.

***The Data Breach***

23. Plaintiffs are former customers of Defendant and data breach victims. As a condition of receiving services from Defendant, Plaintiffs provided it with their Sensitive Information.

24. On information and belief, Defendant collects and maintains its current and former customers' Sensitive Information in its computer systems.

[6] https://www.medimpact.com/privacy-policy (last visited November 5, 2025).

25. According to Defendant's Statement Regarding Cybersecurity Incident ("Statement"), on or about October 27, 2025, Defendant identified ransomware on certain of its systems.

26. Following the Data Breach, Defendant claims to be investigating the incident and working to restore impacted systems.

27. In other words, Defendant's cyber and data security systems were so completely inadequate that they permitted Plaintiffs' and the Class's highly private Sensitive Information to accessed and viewed by cybercriminals for an unknown amount of time.

28. Through its inadequate security practices, Defendant exposed Plaintiffs' and the Class's Sensitive Information for use by fraudsters and sale on the dark web.

29. Defendant has yet to issue formal notices to individuals impacted by the Data Breach.

30. Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing Sensitive Information, as evidenced by the Data Breach.

31. Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' Private Information appear to be the notorious cybercriminal group "Qilin."[7]

---

[7] https://cybernews.com/security/qilin-medimpact-data-breach-healthcare/ (last visited November 5, 2025).

32. Qilin is an especially notorious cybercriminal group. In fact, the federal Office of Information Security released a report warning the public about Qilin.[8] Specifically, the "Threat Profile" stated, *inter alia*, that:

a. "Qilin is a ransomware-as-a-service (RaaS) offering in operation since 2022[.]"[9]

b. "The group likely originates from Russia and was recently observed recruiting affiliates in late 2023."[10]

c. "Researchers have identified dark web posts associated with Qilin in 2022 by a user who is likely connected to the RaaS group."[11]

d. "Victims are directed to communicate with the attackers via dark web portals or encrypted messaging services, ensuring the attackers' anonymity and complicating law enforcement efforts to track interactions."[12]

e. "[A]ctors practice double extortion and operate a data leak site (DLS) where victims are posted."[13]

33. On or around October 27, 2025, Qilin revealed on the Dark Web that it had exfiltrated 160 Gigabytes of data from Defendant during the Data Breach.[14] A screenshot of Qilin's Dark Web shows that it had received at least 899 views and provided copies of documents it had stolen.

---

[8] *Qilin*, OFFICE INFO. SEC. (June 18, 2024) https://www.hhs.gov/sites/default/files/qilin-threat-profile-tlpclear.pdf."
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*




34. Thus, on information and belief, Plaintiffs' and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

35. Cybercriminals and other fraudsters need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

36. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

37. In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its

electronic records storing Sensitive Information would be targeted by cybercriminals.

38. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[15] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[16]

39. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [17]

40. Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller

[15] *2021 Data Breach Annual Report*, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited October 23, 2025).

[16] *Id.*

[17] *Gordon M. Snow Statement*, FBI, https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited October 23, 2025).

municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[18]

41. In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[19]

42. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Plaintiff Laura Sales' Experience***

43. Plaintiff Sales is a current customer of Defendant, having participated in a healthcare plan that uses MedImpact as its pharmacy benefit manager since at least 2023.

44. As a condition of receiving services with Defendant, Plaintiff Sales or her third-party agent provided Defendant with her Sensitive Information.

45. Plaintiff Sales provided her Sensitive Information to Defendant and trusted that it would use reasonable measures to protect it according to state and federal law.

46. Defendant deprived Plaintiff Sales of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her of the Breach.

---

[18] Ben Kochman, *Secret Service Warn Of Targeted Ransomware*, LAW360 (Nov. 18, 2019) https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[19] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited October 23, 2025);

47. As a result of their inadequate cybersecurity, Defendant exposed Plaintiff Sales's Sensitive Information for theft by cybercriminals and fraudsters and sale on the dark web.

48. Plaintiff Sales spent time dealing with the consequences of the Data Breach, which includes time spent gathering information about the Data Breach and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

49. Following the Data Breach, Plaintiff Sales has experienced a large influx of spam and scam messages. This further demonstrates that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

50. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[20] On information and belief, the fraud and spam messages Plaintiff Sales is experiencing are a result of the Data Breach.

51. Plaintiff Sales has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

[20] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited September 4, 2025).

52. Plaintiff Sales has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

53. Plaintiff Sales has suffered additional actual injury in the form of damages to and diminution in the value of their Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

54. Plaintiff Sales suffered actual injury from the exposure of her Sensitive Information —which violates her rights to privacy.

55. Plaintiff Sales has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

56. Plaintiff Sales has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff Joann McKenzie' Experience***

57. Plaintiff McKenzie is a current customer of Defendant, having participated in a healthcare plan that uses MedImpact as its pharmacy benefit manager.

58. As a condition of receiving services with Defendant, Plaintiff McKenzie or her third-party agent provided Defendant with her Sensitive Information.

59. Plaintiff McKenzie provided her Sensitive Information to Defendant and trusted that it would use reasonable measures to protect it according to state and federal law.

60. Defendant deprived Plaintiff McKenzie of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her of the Breach.

61. As a result of their inadequate cybersecurity, Defendant exposed Plaintiff McKenzie's Sensitive Information for theft by cybercriminals and fraudsters and sale on the dark web.

62. Plaintiff McKenzie spent time dealing with the consequences of the Data Breach, which includes time spent gathering information about the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred, and placing a lock on her credit. This time has been lost forever and cannot be recaptured.

63. Following the Data Breach, Plaintiff McKenzie was notified by Chase Bank on October 27, 2025, that she had suffered from an attempted fraudulent charge on her credit card from "Wechat International," a company which she has no association with. This further demonstrates that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

64. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[21] On information and belief, the attempted unauthorized charge on her financial account that Plaintiff McKenzie experienced is a result of the Data Breach.

65. Plaintiff McKenzie has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

66. Plaintiff McKenzie has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

67. Plaintiff McKenzie has suffered additional actual injury in the form of damages to and diminution in the value of their Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

68. Plaintiff McKenzie suffered actual injury from the exposure of her Sensitive Information —which violates her rights to privacy.

[21] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited September 4, 2025).

69. Plaintiff McKenzie has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

70. Plaintiff McKenzie has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

71. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

72. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake the appropriate measures to protect the Sensitive Information in their possession.

73. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

74. The value of Plaintiffs' and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

75. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

76. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

77. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

78. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

79. Defendant disclosed the Sensitive Information of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts,

and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

80. Defendant's failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

81. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

82. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps;
b. properly dispose of Sensitive Information that is no longer needed;
c. encrypt information stored on computer networks;
d. understand their network's vulnerabilities; and
e. implement policies to correct security problems.

83. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

84. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

85. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

86. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

87. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish

national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [22]

88. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[23]

89. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

---

[22] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[23] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

90. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fail to Comply with Industry Standards***

91. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

92. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

93. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

94. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards

of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

95. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

96. Plaintiffs are suing on behalf of themselves and the proposed Class ("Class"), defined as follows:

> All United States citizens whose Sensitive Information was compromised in the Data Breach discovered by Defendant in October 2025, including all those who received notice of the Breach.

97. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

98. Plaintiffs reserve the right to amend the class definition.

99. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiffs are representative of the Class, consisting of several thousands of members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with the Class's interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

   i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive Information;

   ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

iv. Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's Sensitive Information;

v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether the Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiffs' and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

100. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

101. Plaintiffs reallege all previous paragraphs as if fully set forth below.

102. Plaintiffs and members of the Class entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in their care and custody, including implementing industry-standard security procedures

sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

103. Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

104. Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

105. Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of

individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and the Class's Sensitive Information.

106. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

107. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiffs and the Class and the importance of exercising reasonable care in handling it.

108. Defendant breached their duties by failing to exercise reasonable care in supervising their employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiffs and the Class which actually and proximately caused the Data Breach and Plaintiffs' and the Class's injury. Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and the Class have suffered or will suffer damages, including monetary damages, increased

risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

109. Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiffs and the Class)

110. Plaintiffs reallege all previous paragraphs as if fully set forth below.

111. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Sensitive Information.

112. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of

Defendant's duty to protect Plaintiffs' and the members of the Class's Sensitive Information.

113. Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

114. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

115. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

116. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential Sensitive Information.

117. Defendant violated its under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

118. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

119. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

121. The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

122. Had Plaintiffs and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiffs and members of the Class would not have entrusted Defendant with their Sensitive Information.

123. Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

124. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

125. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect their Sensitive Information in their continued possession.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

126. Plaintiffs reallege all previous paragraphs as if fully set forth below.

127. Plaintiffs and Class members either directly contracted with Defendant or Plaintiffs and Class members were the third-party beneficiaries of contracts with Defendant.

128. Plaintiffs and Class members were required to provide their Sensitive Information to Defendant as a condition of receiving medical services provided by Defendant. Plaintiffs and Class members provided their Sensitive Information to Defendant or its third-party agents in exchange for Defendant's medical services.

129. Plaintiffs and Class members reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

130. Plaintiffs and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

131. Plaintiffs and the Class members accepted Defendant's offers by disclosing their Sensitive Information to Defendant or its third-party agents in exchange for medical services.

132. In turn, and through internal policies, Defendant agreed to protect and not disclose the Sensitive Information to unauthorized persons.

133. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiffs' and Class Member's Sensitive Information.

134. Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class members with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

135. After all, Plaintiffs and Class members would not have entrusted their Sensitive Information to Defendant in the absence of such an agreement with Defendant.

136. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

137. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

138. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

139. Defendant materially breached the contracts it entered with Plaintiffs and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Sensitive Information that Defendant created, received, maintained, and transmitted.

140. In these and other ways, Defendant violated its duty of good faith and fair dealing.

141. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class members' injuries (as detailed *supra*).

142. And, on information and belief, Plaintiffs' Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

143. Plaintiffs and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

144. Plaintiffs reallege all previous paragraphs as if fully set forth below.

145. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

146. Plaintiffs and members of the Class conferred a benefit upon Defendant in providing Sensitive Information to Defendant.

147. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Class. Defendant also benefited from the receipt of Plaintiffs' and the Class's Sensitive Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiffs and the Class.

148. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and the Class's Sensitive Information because Defendant failed to adequately protect their Sensitive Information. Plaintiffs and the proposed Class would not have provided their Sensitive Information to Defendant had they known Defendant would not adequately protect their Sensitive Information.

149. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by them because of its misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

150. Plaintiffs reallege all previous paragraphs as if fully set forth below.

151. Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

152. Defendant owed a duty, including Plaintiffs and the Class, to keep this information confidential.

153. The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class Members' Sensitive Information is highly offensive to a reasonable person.

154. The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

155. The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

156. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

157. Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

158. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

159. As a proximate result of Defendant's acts and omissions, the private Sensitive Information of Plaintiffs and the Class were made available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed *supra*).

160. And, on information and belief, Plaintiffs' Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

161. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Sensitive Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

162. Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiffs and the Class.

163. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT VI**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

164. Plaintiffs reallege all previous paragraphs as if fully set forth below.

165. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

166. Defendant stored the Sensitive Information of Plaintiffs and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the Class's Sensitive Information secure to prevent the loss or misuse of that Sensitive Information.

167. Defendant failed to disclose to Plaintiffs and the Class that their Sensitive Information was not secure. However, Plaintiffs and the Class were entitled to assume, and did assume, that Defendant had secured their Sensitive Information. At no time were Plaintiffs and the Class on notice that their Sensitive Information was not secure, which Defendant had a duty to disclose.

168. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and the Class's nonencrypted and nonredacted Sensitive Information.

169. Had Defendant complied with these requirements, Plaintiffs and the Class would not have suffered the damages related to the data breach.

170. Defendant's conduct was unlawful, in that it violated the CCPA.

171. Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

172. Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

173. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Sensitive Information.

174. Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

175. Instead, Defendant made the Sensitive Information of Plaintiffs and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

176. As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

177. For one, on information and belief, Plaintiffs' and the Class's stolen Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

178. The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

179. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

180. Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**<u>COUNT VII</u>**
**Violation of the Confidentiality of Medical Information Act**
**Cal. Civ. Code §§ 56, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

181. Plaintiffs reallege all previous paragraphs as if fully set forth below.

182. Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information. Cal Civ Code Div. 1, Pt. 2.6.

183. Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal Civ Code § 56.101(a).

184. And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal Civ Code § 56.101(a).

185. Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal Civ Code § 56.36(b).

186. Here, Defendant is subject to the CMIA because Defendant is a provider of health care. And Defendant created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiffs and the Class.

187. But Defendant was negligent because it failed to take reasonable precautions to ensure its data systems were protected. As a result of Defendant's negligence, an unauthorized third-party viewed and obtained the medical information of Plaintiffs and the Class.

188. As such, Defendant is therefore liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

## **PRAYER FOR RELIEF**

Plaintiffs and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements Plaintiffs the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: November 5, 2025

By: */s/ Carly M. Roman*

Carly M. Roman (SBN: 349895)
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
raina@straussborrelli.com

**Pro Hac Vice forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*